Good morning. May it please the court, my name is Alan Bentley. I represented Lyle Sean Conway, one of the appellants in the district court. In this consolidated appeal, I will be arguing for Mr. Conway and for six other appellants, Stormy Paul, Lyle Wayne Conway, Gerald George, Elizabeth Vicki Gord, David Turnipseed, and Joshua Turnipseed. A seventh appellant, Salas Cross, is deceased. I would note for the panel that David Cross, the administrator of Mr. Cross' estate, has filed a motion to be substituted for Mr. Cross on this appeal, and that motion has been referred to this panel for decision. It's not opposed by the government. I will be the only attorney arguing for the appellants, and I do so with the consent of the counsel for the other appellants, three of whom are present here in court today. All of the appellants except for Mr. Paul are members of the Puyallup tribe, who operated retail establishments selling cigarettes on reservation lands near Tacoma, Washington. The cigarettes did not bear Washington state excise stamps, and Washington's excise tax on the cigarettes had not been paid. Mr. Paul is a member of the Lummi Nation, who operated a cigarette distribution business that sold unstamped cigarettes to the others. All of the Puyallup tribe appellants believe that the right-to-trade clause contained in the Treaty of Medicine Creek permitted them to sell unstamped cigarettes, a contention that this court had rejected and that the district court below rejected on the authority of the Baker case in this court. Defendants were charged with conspiring to violate the Contraband Cigarette Trafficking Act and with contraband trafficking itself, and in some instances with money-laundering offenses based on their sales of unstamped cigarettes. After their pretrial motions challenging the indictment had been denied, each of the defendants entered a plea of guilty to one or more felony charges pursuant to a written plea agreement. The core elements of the plea agreements were substantially the same for each defendant. Each of the defendants was later sentenced to a term of probation, and part of each sentence was a requirement that the defendants spend time in home confinement with electronic monitoring. After the sentences had been imposed, the government moved for the award of restitution to the State of Washington for the excise tax that the government asserted would have been collected if the defendants had purchased and affixed the excise tax stamps. The court scheduled the government's request for oral argument. In briefing prior to argument and at the argument itself, defendants argued that the task of setting restitution amounts was too complex, that defendants should get credit against any restitution for about $4 million in property and cash that had been seized for forfeiture to the United States, and that in the event these arguments failed, the State's loss should be calculated on the basis of the retroactive application of the lower tax rate embodied in a tobacco tax agreement between the Puyallup Tribe and the State, including consideration of the fact that the State would receive 30 percent of tax revenues collected pursuant to that agreement. The District Court took these matters under advisement and then issued the order which we ask this Court to review. The District Court rejected our argument based on the complexity of the process of setting restitution. The District Court declined to give defendants credit for any of the seized property and cash, citing United States v. Bright, noting that credit would be appropriate if the State had received any of the seized assets but that the State had not received any at that time. And the District Court found that there was no legal basis for retroactively applying the lower tax revenues that the State now receives pursuant to the Puyallup State Tribal Cigarette Tax Compact. Excuse me. Yes. What standard do we apply as to those three issues? Well, we are pressing the issue of the District Court's reliance on plea agreements to set the restitution amount, and that is decided on an abuse of discretion standard. And it is our position that the District Court abused its discretion by disregarding, in effect, its earlier conclusions about the restitution amounts that were set forth in the plea agreements. The District Court held, in effect, that the defendants were precluded from arguing or from seeking lower restitution amounts than what was set forth in their plea agreements and went ahead and imposed the same amounts that had been included in the plea agreements. As I mentioned, the District Court found that those amounts, in an earlier opinion addressing the issue of what sentence to impose, the Court found that those amounts were manipulated, that they did not permit the Court to find the actual amount of loss with a reasonable degree of certainty. Now, the standard that the Court would have to apply to use those amounts for guidelines purposes is the same standard that would be applied in using those amounts for restitution purposes, that is, proof by a preponderance of the evidence. So... Was the district judge looking more through the perspective of whether the tax losses reflected culpability or warranting imprisonment? Wasn't his primary concern whether imprisonment was... I would agree, absolutely, and in a way that illustrates the artificiality because the sentences he imposed were flat. I mean, everyone basically got the same sentence, despite the very different tax loss amounts that were set forth in the plea agreements. But, I mean, the district judge can try to give the defendants a break in the interest of justice on the guidelines, right? I agree. I mean, the reverse to everything is to make it consistent. There might be a different result on the amount of time served, right? Well, I don't know that we can turn the clock back that far. All we're asking for is proof that these restitutions amounts be proved up before the district court, which they were not. And the government, in its brief, indicates maybe it would take a one-day hearing. The district court is busy. We know that. They could refer it to a magistrate judge. Let the government put on its proof. Let us check out their numbers. What the court was saying in its opinion on sentence was recognizing that the loss amount is not an element of the offense. It's not something that necessarily was carefully studied by defense counsel. I look back at the sentencing record, and I made the statement to the court. I said, we don't have an agreement on restitution. And for all of us, I think this came out of left field a little bit. Just to peek behind the curtain, what would you expect to urge to the court at the hearing? Not that that's binding on us, but, I mean, I gather you think you can prove that the losses were not that substantial. I think it's important that whatever number results, and it might result in the very same number. I don't disagree with that. But the process is important here. And there may be errors in these numbers. We would like the opportunity to put the government to its proof. What process was used in arriving at these numbers? A negotiation process was used. Different numbers were floated, at least with me and my client. And that's the process that was used. There has been, the government had done an audit. Some of that audit material had been given to me, probably to other counsel. Well, what would be different about a hearing? I mean, you negotiated, you had their figures, and you knew what you knew. Well, there may be offsets involved. There may be some credit due to defendants for personnel a state would have had to hire to handle all the revenues that would have been coming into the state, the bookkeeping of that revenue. When we get back, if we get to a remand, we may find that the state has gotten funds out of the forfeiture, which hadn't been the case at the time of sentence, at the time of the restitution order. Our position is simply this. If the record had not contained the district court's serious reservations about those numbers, we wouldn't be here today. If we'd had a hearing, and the government had presented its audit report, and we'd had a chance to verify that, we wouldn't be here today. I think what the district court was recognizing in its order on sentences that the actual dollars that were lost to the state were perhaps the least important thing to defense counsel when these plea agreements were negotiated. And that's really the gist of our position here on appeal. Wouldn't those losses drive the sentencing guidelines up in terms of imprisonment? I mean, wasn't there some concern about that? That is correct. What would be the guideline range for losses in the realm of $4 million? I think the district court said it would be stratospheric if that loss were foreseeable to all defendants. Now, that's the amount that Mr. Paul's activities allegedly led to. There never was a time when the government took the position that each defendant would be jointly and severally liable for the entire $4 million. In order to get there, I think you'd need to prove foreseeability. This was really a classic hub-and-spoke conspiracy, and I don't think you could assume that each defendant would be liable for that entire $4 million under the guidelines. But wasn't the risk there in these written plea agreements by stipulating to that large amount that prison sentences might well be and likely would be the advisory sentencing guideline range? I agree, yes. Let me ask, of the property that was seized, has any of it gone to the state? I don't know. Perhaps government counsel can enlighten us. I know that government counsel at sentencing indicated that the state had not applied for it, but they would be entitled to 20 percent. They would have a claim to 20 percent, although it might not be granted. Have any restitution payments been made? I see there's a schedule. I believe I would infer that restitution payments have been made per the schedule. I'm fairly confident of that, although I don't, given the reasonableness of the payments and given the fact defendants are still on probation and none of them have been subject to a violation, I assume those payments are being made on a regular basis. Okay. Thank you, counsel. Thank you, Your Honor. Good morning. May it please the Court, my name is Darwin Roberts. I'm an assistant U.S. attorney from Seattle, and I'm representing the government in this appeal. The district court's restitution order should be affirmed in this case, and it was not an abuse of discretion for several reasons. First of all, the restitution numbers that were applied by the district court were rationally derived and they were sensibly derived. They were not simply pulled out of a hat or pulled out of thin air or the subject of some sort of deal-making negotiation process. They came from evidence that was derived from the searches of these smoke shops when those searches were executed. There were invoices, there were other documents reflecting the number of cigarettes that moved from Mr. Paul, the wholesaler, to each of these retail defendant's shops. The number of cigarettes that were sold, that were moved through this system, was used to derive the number of packs of cigarettes that were sold to retail customers by these smoke shops. And then that number of packs sold to retail customers was used to derive the presumed amount of tax that would be due to Washington State as a result. So that's the starting point. Yes. What offsets were calculated, if any? The cigarettes that were seized when the search warrants were executed were not counted because in theory they could have been argued to be intended loss, but they were not counted at all. They were forfeited property, so those weren't included. Cigarettes that might have been purchased by these smoke shops or actually there is some evidence in the record, and I refer to the colloquy that I believe that's S.E.R. 30, regarding purchases by these smoke shops of cigarettes similarly untaxed from other wholesalers that just simply weren't made part of the calculations in this case. There were substantial quantities of those cigarettes that could have been included but were not. The government limited its position on the proper amount of tax loss to the cigarettes that came from Mr. Paul to the other defendants, the retail defendants in this case. So that was also an offset. The government's position is that these were conservatively calculated numbers. They did not represent possible losses that didn't occur. They did not represent joint and several liability on the part of the retail defendants.  This was a minimal number, and that, I think, is why defense counsel were willing to stipulate to these numbers as part of the plea agreements. But in terms of offsets, for example, on other recoveries, have you calculated those into it, whether it was sale of forfeited property or any other types of administrative offsets, bookkeeping, so forth? I believe, Your Honor, that the forfeited property, except to the extent that it wasn't included at the head end, in that these cigarettes that we captured weren't made part of the tax loss, that it hasn't been included. But addressing what I think was Judge Fletcher's concern about where the seized property has gone, there is a process by which the district court can be petitioned to apply the forfeited property against the restitution judgment. I don't know, unfortunately, standing here today, what quantum of property, if any, has gone back to the state. I could submit that to the court if the court wanted. Well, looking at these monthly payments, it seems quite unlikely that the restitution is ever going to be made in full. Would you agree? Yes. So, I guess I can't put it either way. What are you really fighting about? Can't you work this out in terms of a realistic schedule? Because I just don't see any way that the restitution can – well, we all know it can't be made in the – correct. Well, Your Honor, I think that's always a possible peril in criminal cases. But that's not to say that if the defendants derived some future source of income that it might not be paid back. And I don't think just the fact that it might be unlikely requires the government to deal it away. And I think Congress's purpose in making these amounts mandatory under the Mandatory Victim Restitution Act was to provide a strong floor. No, but I guess I'm suggesting that what they want is a hearing to – I mean, that's their argument today. I understand their primary argument is that restitution doesn't apply at all. But they want a hearing to reduce the amounts. But even if you take the amounts and cut them in half, it's unlikely that those amounts are going to be paid. Unlikely. Right. But, I mean, I think that the place that that calculation figures into the sentencing process is at the setting of the payment schedule. I mean, it's – by virtue of having committed these crimes under the Mandatory Victim Restitution Act, they owe the restitution. The district court ameliorates that somewhat by setting a payment schedule that's pegged to their current income levels. But I don't think – Right, but, I mean, let's say – let's take Stormy Paul. The restitution's $4 million, 500 bucks a month. How long has he got to live? Not within my power, fortunately, Your Honor. But, I mean, realistically, I'm just being a little practical here, is that we're fighting about something that ultimately may not make any difference to either party in terms of the ultimate restitution paid. So it doesn't affect anything today. We'll deal with the issue straight up. But, frankly, it seems to me that you might want to sit down with counsel and say, what's your real argument and how much do you really want to reduce and perhaps save a remand? Right. Just a suggestion. I take your point, Your Honor, and I'll definitely pass that along to the other folks from my office. I would submit, though, that there are several other reasons for the court to affirm and not find an abuse of discretion here. And one, I think, is that there really has to be some significance to the presence of facts like this in a plea agreement. I think defendants mischaracterize the plea agreement somewhat when they suggest that these facts were only in here, quote, unquote, for purposes of sentencing. And they try to argue that, well, sentencing is just the term of imprisonment under the sentencing guidelines. First of all, restitution is clearly a purpose of sentencing. I mean, the only authority they cite for this point is the Stoddard case, which really, I think, doesn't support that at all. We cite the Ninth Circuit's Gamatech and Romeo cases at pages 27 to 28 of our brief, which I think clearly hold that restitution is part of sentencing. And also it's at section 5E1.1 of the sentencing guidelines. So I don't think there can be any question that putting a fact in a plea agreement makes it a live fact for purposes of sentencing. Moreover, it – I don't disagree with that. But I think under the circumstances of this case, defendants may have a valid point in indicating that everyone seemed to be proceeding under the assumption that there might be a different calculation on restitution. Well, as early as the sentencing hearing on August 29th, and this is in the record if you look at SCR 34, AUSA Freeman, who argued for the United States, took the position months before the United States filed its brief that the loss amounts in the plea agreements could form a valid basis for a future restitution order. And the district court explicitly put off consideration of – or explicitly declined to fine a number of the defendants on the grounds that the – it was going to look at this restitution issue. And as a consequence, it didn't want to impose a bunch of fines at sentencing and then go ahead and impose possibly substantial restitution payments, which is exactly how the district court characterized it. SCR 58, court stated that it may impose, quote, a significant restitution obligation. Again, that's the date of sentencing, August 29th, 2007, for most of these defendants. But I think it's a real concern if the district court can't rely on these facts from the plea agreements. The facts were not just in this paragraph 7 in most of these plea agreements, where it says the tax loss for purposes of sentencing. These were facts from the factual colloquy in paragraph 8 of the plea agreements, where they – you know, the same one where they're put under oath, under penalty of perjury, and they say, I was responsible for a tax loss of $587,000. And in fact, it's more than that. They take responsibility for a specific number of cigarettes in each case, which further, I think, underpins the rationality of the calculation as to how the numbers were reached. Also, the court – as the court well knows, facts that are in a plea agreement, that are stipulated to in a plea agreement, have consequences far beyond the sentencing in the immediate case. I mean, they support sentencing enhancements under the Armed Career Criminal Act to Section 924. They may have immigration consequences. They may have consequences, for example, you know, possession of a firearm, you know, a domestic violence conviction, may strip a law enforcement officer of the right to carry a firearm. The courts have upheld that. So for the defendants to come in here and argue, well, you know, we really weren't thinking about the possible consequences for restitution of stipulating to these facts in our plea agreement, I find highly questionable. And Judge Conlon, I would endorse your point that these facts surely would be on the radar screen for any defense attorney because they would normally impact the district judge's selection of where in the sentencing guidelines range sentence was actually imposed. In other words, not just that they're falling within a stair step of between 400,000 and 999,000, and it doesn't matter where in there they wind up. They want – and presumably no competent defense counsel would agree to a figure that was a dollar more than what they thought the government could prove and what might be pushed against their clients. I want to ask about the motion of Sun Cross to be substituted for his father. Clearly the conviction should be wiped out because of his death. And if the restitution is part of the punishment, it too should go. So what's the purpose in his wanting to be substituted in here? Your Honor, I would respectfully request that the court permit the parties to brief the issue of whether the restitution judgment is actually vacated upon his death. I don't believe – I looked at this issue. I'm not sure the issue is even before us. Right. I'm trying to figure out why he's moving for substitution in this proceeding rather than just the ordinary proceeding of a motion to wipe everything out because the father is deceased. Yeah, I don't quite feel competent to answer that, Your Honor. With all due respect, I'm really not sure. Well, so I don't feel quite confident in allowing him to substitute in to this proceeding. I don't understand. Yes, Your Honor. I understand that we did not file any pleadings in opposition to that request. But beyond that, I'm afraid I don't have a position on it today. Okay. Anything further? Thank you for your argument. Thank you. Rebuttal? Simply on the issue of Mr. Cross, his attorney is here today. I don't feel authorized to address that myself. Where's Mr. Cross, the attorney here? Would you mind stepping forward? I know you weren't scheduled to speak, and we'll save your time, don't worry. But since you're here, if you don't mind giving us a brief presentation. Yes. Michael Clark, may it please the Court, on behalf of, I guess, David Cross and Silas Cross. And if I may, I'll try and be brief. I was not immediately advised of Mr. Cross's passing. I was advised, I think, about two weeks before the opening brief was to be filed. And at that point, there had not been a PR appointed. I was in contact with the attorney for the estate, and he asked me to file a motion to substitute parties at this point. The estate didn't want to occur at this point. At that point, additional attorney's fees. I looked into the issue, Judge Fletcher, with respect to whether or not the conviction itself abates. And quite frankly, I think it's debatable, because the only order that was challenged was the restitution order and not the conviction itself. We didn't, in other words, appeal the finding of guilty of Mr. Cross. Well, even if you didn't, you're entitled to wipe it out. Well, if the Court would allow us to file some supplemental briefing on that issue, as suggested by the government, I'd be happy to do that. Well, or perhaps it's a remedy in the district court. Well, and that's kind of what I was thinking. If this ultimately is remanded, or whatever this court does, I think I could present that issue to the district court. I would hope that I'd be allowed to do that, given the circumstances. But I think there is some debate and some split of authority, as indicated by the government's brief, with respect to whether or not the order survives the passing of the defendant. Okay. Any further questions? Thank you. Thank you. No, no, he gets his rebuttal still, though. Don't get too eager, Mr. Roberts. I'm going to waive the rest of my time, unless the Court has any questions. And I will say for the Court that I've heard the comments, and I do appreciate the Court's settlement staff. I've utilized them in other cases, and I don't think that's a bad suggestion. Well, I mean, to flip it around, does it make any difference if the restitution amounts are doubled? Well, I mean, when I moot courted this, I was asked that question, well, if it gets remanded, are you running a risk? And the consensus was, you are. But, again, the odds of Mr. Laushon-Connolly's paying $900,000 are just about the same as paying $450,000. I mean, unless there's something we don't know, and, of course, as the government says, there may be some inheritance or some distribution. But we appreciate the legal arguments. We're going to deal with it straight up. But on the other hand. I think that part of it goes on a case-by-case basis. I'm court appointed. My client has many liabilities. That may not be the case for all defendants, and there may be something that can be done. We appreciate your argument. Thank you all for your arguments and presentation. The case just heard will be submitted for decision.
judges: B. Fletcher, Thomas, Cjj Conlon (N. Ill.), Dj